TERRITORY OF HAWAII *v.* LARRY A. C. WONG, TEOTIMO CUYO, TIBURCIO BUNAO, BUENAVENTURA CARSOLA, ALFREDO A'CIDO, QUIRINO AQUINO, DIEGO SEMION, CIPRIANO SICAN CABRADILLA AND FRANCISCO BARIENTOS.

NO. 2900.

ARGUED DECEMBER 4, 1952.                DECIDED JUNE 23, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

258

OPINION OF THE COURT BY TOWSE, C. J.

Writ of error is prosecuted by the Territory of Hawaii (R. L. H. 1945, § 9952) from the ruling of the district magistrate for the district of Koloa, county of Kauai sustaining a demurrer and dismissing the complaint charging the defendants in error with being present at a gambling game. The demurrer was sustained upon the ground that section 11343 of the Revised Laws of Hawaii 1945 is violative of the due process clause of the Fifth Amendment to the Constitution of the United States.

Eight errors are assigned. All relate to the ruling of unconstitutionality of that portion of section 11343 constituting the charge as applied to the facts considered upon demurrer.

The primary contention of the defendants in error is that the provision of section 11343 under which they were charged is "so vague and uncertain in its standard of conduct that it violates the due process provision of the Fifth Amendment." The Territory contends that the pertinent portion of the section, when interpreted "as referring to intentional presence with knowledge of the nature of the game," formulates a sufficiently clear and ascertainable standard of conduct.

Section 11343 provides: "Every person who deals,

plays, or carries on, opens or causes to be opened, or who conducts either as owner or employee, whether for hire or not, any game of faro, *monte,* roulette, tan, fan tan, or any banking or percentage game played with cards, dice or any device for money, checks, credit or any representative of value or any other game in which money or anything of value is lost or won, and every person who plays or bets at or against any such prohibited game or games, *and every person present where such game or games are being played or carried on,* is guilty of a misdemeanor." (Emphasis added.)

The complaint alleges: "The Territory of Hawaii charges that the above named defendants, did, at Koloa, District of Koloa, County of Kauai, Territory of Hawaii, on the 8th day of January, A.D., 1952, violate the provisions of Section 11343 of the Revised Laws of Hawaii, 1945, by being present at a place where a gambling game was being played and carried on, to-wit: 'Monte' at which money or something of value was lost or won."

The section expressly prohibits: first, dealing, playing, carrying on, or the conducting of any of the enumerated games; second, participation in any of the prohibited games; third, presence where such games are being played or carried on. Two classes of active participants and one of persons "present" are designated and embraced within its terms. We are here concerned solely with the latter class.

Construing the section in its component parts, we find all classes of persons at whom it is directed to be clearly and concisely defined. The defect, if any, lies not in its vagueness or indefiniteness, but rather in the patently broad scope of its application to the latter class.

To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will

strive to focus the scope of the provision to a narrow and more restricted construction. (*Territory* v. *Marshall,* 13 Haw. 76; *Territory* v. *Miguel,* 18 Haw. 402; *Pan Am. Air. Co.* v. *Godbold,* 36 Haw. 170; *Godbold* v. *Manebog,* 36 Haw. 206; *United States* v. *Delaware and Hudson Co.,* 213 U. S. 366; 53 L. Ed. 836, 29 S. Ct. 527; *Kovacs* v. *Cooper,* 336 U. S. 77, 93 L. Ed. 513, 69 S. Ct. 448.)

Provisions of a penal statute will be accorded a limited and reasonable interpretation under this doctrine in order to preserve overall purpose and to avoid absurd results. (R. L. H. 1945, §§ 12, 13.) Lacking interpretation, absurd results may ofttimes manifest themselves in the enforcement of penal statutes of doubtful or unrestricted class application. "General terms descriptive of a class of persons made subject to a criminal statute may and should be limited where the literal application of the statute would lead to extreme or absurd results, and where the legislative purpose gathered from the whole Act would be satisfied by a more limited interpretation." (*United States* v. *Katz,* 271 U. S. 354, 362, 70 L. Ed. 986, 46 S. Ct. 513; *United States* v. *Hartwell,* 6 Wall. 385, 18 L. Ed. 830; *Kirchman* v. *United States,* 256 U. S. 363, 65 L. Ed. 992, 41 S. Ct. 514; *United States* v. *Alford,* 274 U. S. 264, 71 L. Ed. 1040, 47 S. Ct. 597; *United States* v. *Raynor,* 302 U. S. 540, 82 L. Ed. 413, 58 S. Ct. 353.)

Since enacted in 1894 section 11343 has survived without amendment, though not without numerous attacks in lower courts upon its applicability. No legislative history is available in aid of interpretation of the latter portion.

Persons actively participating in professional gaming or who are present at a place where professional gaming is being conducted are clearly within the classes encompassed by the statute as possessing the requisite elements of intentional presence and knowledge that the game con-

stitutes gaming. In such circumstances these elements arise from mere presence. It is nonprofessional or social gaming in its varied forms in private homes and public gatherings, or gaming conducted in a nonprofessional, nonprofit environment which gives rise to doubtful application of the statute. Although all such gaming be in contravention of the section, the element of nonprofessionalism attaching to such layouts, siti, purpose, or class of participants presents the overall problem of application. As a general rule, those present at such games, possessing the requisite knowledge of its purpose and an intent to be so present, are within the proscribed class of persons "present."

All classes encompassed by the statute may be categorized in another manner to include those present within an enclosed or barricaded place wherein gaming, professional or otherwise, is in progress, but who, due to the nature or type of the gaming are not continuously participating play by play. Those participating in a definite play of such a game *ipso facto* are within the proscribed class. Those who may not be participating in a play at the time of arrest present quite another problem. Such persons so present with the requisite knowledge of the purpose of the game and an intent to be so present, are included within the class. All persons present within such places subject themselves to the applicable test. Indicia of guilt soars by the very nature of the situs.

The antithesis of the foregoing is gaming in an open or viewable place such as a public park, building or other place permitting a total or partial view of gaming in progress. The test applicable to those in the immediate orbit of such a game, whether momentarily participating or not, is the same as that applied to gaming within an enclosed or barricaded place selected to accord privacy or difficulty

of detection. A bystander or pedestrian in the vicinity but not sufficiently near to observe the plays of such game or to participate, obviously lacks the elements of knowledge and intent to be "present," even though in the immediate vicinity. Such persons are not "present" as we construe section 11343 unless by their movements, connection, contact, or participating in such gaming they place themselves within one or more of the proscribed classes. Persons in this "open-view situs" class are less likely to possess, without an affirmative act on their part, the requisites of knowledge and intent applicable to being "present" than are those in the immediate vicinity of gaming being conducted in an enclosed or barricaded place.

Materially bearing upon the issue of presence in the various situations discussed, is the quantum of evidence required to support such conviction. The proof required to support a charge of being present at gaming carried on in an enclosed or barricaded place is patently obvious. Should such situs be principally or exclusively employed for gaming, little doubt exists that those present are "present" within the meaning of the statute. Suggestive of another type of enclosed situs is a private home or club wherein a person who is visiting or performing family chores, or participating in purely non-gaming, social entertainment while others in the same or adjoining room or other place within the structure are engaged in gaming. In nonprofit, social organizations or fraternity groups is a person at the refreshment bar "present" at gaming in progress at another end of the room, or, is a person who may be momentarily serving such refreshments to one of the gaming participants considered "present"? Is the casual and decried kibitzer or his counterpart who elects "to observe but not participate" considered as "present"? Each of the foregoing may be answered by applying the

statute in the reasonable and direct purport of its enactment *to prohibit as well as discourage all types of gaming.* So applying section 11343 its terms prohibit *intentional* "presence" with *knowledge* that the game in progress constitutes gaming.

Factual situations, it is urged, have developed in past prosecutions under section 11343 which border upon the dividing line of lawful and unlawful presence. "Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so * * * and if he does so it is familiar to the criminal law to make him take the risk." (*United States* v. *Wurzbach,* 280 U. S. 396, 399, 74 L. Ed. 508, 50 S. Ct. 167.)

That the prohibition of gaming is within the police power of the Territory is too well settled to necessitate the citation of precedent. Since the purpose of enactment of section 11343 is within that power, this court will not question the legislative methods adopted to eliminate the evils of gaming.

We find that section 11343 conveys sufficiently definite warning of proscribed conduct when measured by the common understanding and practices employed in gaming. As announced in *United States* v. *Petrillo,* 332 U. S. 1, 7, 8, 91 L. Ed. 1877, 67 S. Ct. 1538: "We think that the language Congress used provides an adequate warning as to what conduct falls under its ban, and marks boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of Congress. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. *Robinson* v.

*United States,* 324 U. S. 282, 285, 286. It would strain the requirement for certainty in criminal law standards too near the breaking point * * *. See *Screws* v. *United States,* 325 U. S. 91; *United States* v. *Ragen,* 314 U. S. 513, 522, 524, 525. The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the Constitution does not require impossible standards. The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more."

We further find that, to constitute mere presence in violation of the section, the phrase "present where such game or games are being played or carried on" must be interpreted as an intentional physical presence at, or sufficiently near the actual situs of gaming in progress as to permit one to observe its progress, coupled with knowledge that such game constitutes gaming.

We conclude that the provision of section 11343 of the Revised Laws of Hawaii 1945 relating to persons present at a gambling game does not violate the Fifth Amendment to the Constitution of the United States. It contains an ascertainable standard of proscribed conduct, and in order to avoid absurdity in specific factual situations the provision must be interpreted to prescribe intentional presence at gaming in progress with knowledge that said game constitutes gaming.

Reversed and remanded for further proceedings in conformity with this opinion.

*E. K. Aiu,* Deputy County Attorney Kauai County (*A. G. Kaulukou,* County Attorney Kauai County, with him on the opening brief; *J. Y. Shigemura* and *F. D. Gib-*

*son, Jr.,* Deputy Attorneys General, on supplemental brief), for plaintiff in error.

*J. A. Mizuha* (also on the briefs) for defendants in error.