The Honorable Randy Laverty State Senator Post Office Box 303 Jasper, Arkansas 72641-0303 Dear Senator Laverty:
I am writing in response to your request for an opinion on several questions concerning jurisdiction over county roads that lead into or connect with roads within the Buffalo National River. You state the following facts and pose the following four questions:
16 USCA 460 m-14 is the codified federal law that establishes the Buffalo National River. Section 2 of the enabling Act authorizes the Secretary of the Interior to "acquire lands or waters or interests therein by donation, purchase or exchange, except that lands owned by the State of Arkansas or a political subdivision thereof may be acquired only by donation." (16 USCA at subsection 460 m-9(a)).
Before the National Park Service assumes jurisdiction over an Arkansas county road that leads into or connects to a road that is within the Buffalo National River, does the National Park Service have to comply with the above federal law?
Does a county road that leads into or connects to a road that is within the Buffalo National River have to be "donated" to the National Park Service by the appropriate county judge before the National Park Service can assume jurisdiction?
What is the appropriate procedure to effectuate a "donation?"
Does the National Park Service jurisdiction extend to land or other property interests owned by the state or political subdivisions which are outside of the Buffalo National River which have not been "donated" to the National Park Service and are clearly under the active control of the state or one of its political subdivisions (county)? *Page 2 
RESPONSE
In response to your first question, it is clear, with regard to county roads actually within the Buffalo National River, that the federal government does not need a donated ownership interest to "enforce regulations or require permits for traffic on county roads within the park." That was the conclusion of Ops. Att'y Gen. 95-189 and 94-400, copies enclosed. I will refer you to those opinions for the applicable analysis. With regard to whether the National Park Service needs a donation of a county road that "leads into" or "connects" to a road within the Buffalo National River prior to exercising regulatory jurisdiction over that road, the answer is apparently also "no," but will depend upon the surrounding facts. Any regulations in this regard must be reasonably necessary to protect the federal interest. My answer to your first question also dictates the answer to Questions 2 and 4, which essentially restate your first question. An answer to your third question is unnecessary in light of the conclusions reached above.
Question 1 — Before the National Park Service assumes jurisdiction over an Arkansas county road that leads into or connects to a road that is within the Buffalo National River, does the National Park Service have to comply with the above federal law?
It is clear, as an initial matter, that for county roads within the Buffalo National River, the federal government does not need a donated ownership interest to "enforce regulations or require permits for traffic on county roads within the park." This was the conclusion of Op. Att'y Gen. 95-189, issued to you on August 23, 1995. I will refer you to that opinion and to Op. Att'y Gen. 94-400 for the basis of that conclusion. See also, United States v. Alford, 274 U.S. 264 (1927) (stating that "Congress may prohibit the doing of acts upon privately owned lands that imperil the publicly owned forests," citing Camfield v. United States, 167 U.S. 518 (1897) and McKelvey v. United States,260 U.S. 353 (1922). See also, Robbins v. United States, 284 F. 39 (8th Cir. 1922) (National Park Service had power to regulate public highways within the Rocky Mountain National Park and state ownership of such highways did not abdicate constitutional power of Congress in this regard). The law does not appear to have changed materially since the issuance of these opinions.
Your current question goes further and inquires whether the federal government must have received a donation of a county road that leads into or connects to a road within the Buffalo River before it exercises jurisdiction over that type of road. The answer to this question is apparently "no," but may depend upon all the surrounding facts. Under the "Property Clause" of the United States Constitution, courts have upheld the exercise of federal jurisdiction on lands outside, but abutting or adjacent to park boundaries under certain circumstances. Without a more specific factual context for your question, however, I cannot determine whether the federal government has in fact issued regulations purporting to exercise jurisdiction in the particular context of your concern, or whether such regulations are reasonably necessary to protect the federal lands. In the issuance of Attorney General opinions, I am not empowered as a fact-finder. Additionally, as a state executive officer, I am not the proper official to authoritatively interpret any potentially applicable federal regulations. I have set out a general discussion *Page 3 
of the applicable law below, which I hope will aid in your understanding of the issue. Affected parties should consult their own counsel, or the National Park Service, which is in a better position to evaluate the applicable facts.
As an initial matter, the "Property Clause" of the United States Constitution provides that: "the Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the territory or other Property belonging to the United States. . . ." U.S. Const. art. 4, § 3, cl.2. With respect to National Park lands, Congress has delegated this power to the National Park Service ("NPS"). See16 U.S.C. §§ 1
and 3 (stating that "The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service" and that the NPS "shall promote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified . . . by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations").
The NPS has promulgated a number of regulations pertaining to national park lands. See, e.g., 36 U.S.C. § 1 — 5. As noted above, the constitutional provision and laws set out above have been interpreted by the courts to authorize NPS regulation of activities on county roads within national park areas even where the roads in question do not "belong" to the United States. See again, Ops. Att'y Gen. 95-189 and 94-400, citing Free Enterprise Canoe Renters Association v. Watt,711 F.2d 852 (8th Cir. 1983); Wilkenson v. Department of Interior,634 F.Supp. 1265 (D. Colo. 1986); and Arthur v. Fry, 300 F.Supp. 622 (E.D. Tenn.1969).
Although I have found no precise case law addressing the federal regulation of roads "connecting to" or "leading into" roads within a National Park, it has been held that Congress' power and jurisdiction under the "Property Clause" and the power delegated to federal agencies such as the NPS may, in certain circumstances, be exercised even on lands "adjoining" or "abutting" lands within a National Park. See e.g., Free Enterprise, supra (quoting Minnesota v. Block, 660 F.2d 1240, 1249
(8th Cir. 1981), cert denied, 455 U.S. 1007 (1982) to the effect that: ". . . this authority [under the Property Clause] to protect public land . . . must extend to regulation of conduct on or off the public land that would threaten the designated purpose of federal lands"); United States v. Richard, 636 F.2d 236, 240 (8th Cir. 1980), cert denied450 U.S. 1033 (1981) ("federal regulation may exceed federal boundaries when necessary"); United States v. Lindsey, 595 F.2d 5 (9th Cir. 1979) ("It is well established that this clause grants to the United States power to regulate conduct on non-federal land when reasonably necessary to protect adjacent federal property or navigable waters"); United States v. Brown, 552 F.2d 817 (8th Cir. 1977), cert denied 431 U.S. 949 (1977) ("the Court's decision is Kleppe recognizes that when regulation is for the protection of federal property, `the Property Clause is broad enough to reach beyond territorial limits'") and Montero v. Babbitt,921 F.Supp. 134 (E.D. N.Y. 1996) (stating in dicta that "under appropriate circumstances governmental restrictions may even be placed on private land which abuts public land when such restrictions are reasonably necessary to protect the federal interest"). See also *Page 4 
specifically, Grand Lake Estates Homeowners Association v. Veneman, 340 F.Supp.2d 1162 (D. Colo. 2004) (United States Forest Service had power to require special use permits for marina and boat dock on small body of water in private housing subdivision connected by man-made channel to the Arapahoe National Recreation Area's "Shadow Mountain Reservoir" where such federal regulation was reasonably necessary to protect the adjoining federal land and water).
In response to your first question, therefore, it is possible, depending upon the facts, that the National Park Service may legally exercise jurisdiction over county roads "lead[ing] into" or "connect[ing] to roads within the Buffalo National River without having been "donated" the roads in question. Any such regulations must be "reasonably necessary" to protect the federal interest. I have not been presented with all the facts in this regard, however, or pointed to any particular regulations sought to be enforced by the National Park Service. I am not, in any event, a fact-finder in the issuance of Attorney General opinions, and thus cannot resolve any factual issues arising from the broad issues you raise. In addition, as a state executive officer, I am not the appropriate official to interpret any applicable federal regulations. Affected parties should consult their own counsel, or the National Park Service, who are in a better position to evaluate the applicable facts, or to state their position as to the applicable regulations.
Question 2 — Does a county road that leads into or connects to a road that is within the Buffalo National River have to be "donated" to the National Park Service by the appropriate county judge before the National Park Service can assume jurisdiction?
See response to Question 1 above.
Question 3 — What is the appropriate procedure to effectuate a "donation?"
The resolution of this question appears to be moot in light of the conclusions reached above.
Question 4 — Does the National Park Service jurisdiction extend to land or other property interests owned by the state or political subdivisions which are outside of the Buffalo National River which have not been "donated" to the National Park Service and are clearly under the active control of the state or one of its political subdivisions (county)?
See response to Question 1 above.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General