Argued and submitted August 24, 1999, affirmed March 1, 2000

# STATE OF OREGON,
## *Respondent,*

*v.*

# STEVENS EQUIPMENT COMPANY,
## *Appellant.*

## (96C-21145; CA A101575)

998 P2d 1278

Joseph D. Robertson argued the cause for appellant. On the brief were Kim E. Hoyt and Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim and Brewer, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, Stevens Equipment Company, Inc., appeals from a conviction of one count of unlawful storage of hazardous waste in the first degree. ORS 468.926.[1] Defendant assigns error to the trial court's denial of its motion to dismiss the indictment, arguing that the prosecution was in violation of ORS 468.961, a statute that requires district attorneys to adopt and apply certain prosecutorial guidelines before bringing a felony charge for an environmental crime. Defendant also assigns error to the trial court's denial of its motion for judgment of acquittal, arguing that, because the indictment charged it with violating both "statutes" *and* "rules, standards, licenses, permits and orders," the state's proof of the former but not the latter was not sufficient to support a conviction. We disagree and conclude that the trial court was correct in both respects. Accordingly, we affirm.

Defendant's conviction arises from its handling of hazardous materials between late 1993 and April 1995. Defendant is in the business of manufacturing steel products at its work site adjacent to the Willamette River in Salem. In late 1993, defendant entered into a contract with the State of California to provide painted steel sections for the Golden Gate Bridge. To fulfill the contract, defendant painted the steel bridge sections with a combination of water-based and solvent-based paints, which generated considerable hazardous waste. Defendant's employees placed the waste, which was mostly excess paint and used paint thinner, in 55-gallon barrels and stored it for recycling.

In March 1995, defendant's management became aware that it had fallen behind in recycling and disposing of

---

[1] ORS 468.926 provides, in relevant part:

"(1) A person commits the crime of unlawful disposal, storage, or treatment of hazardous waste in the first degree if the person, in violation of ORS 466.095 or 466.100, knowingly disposes of, stores or treats hazardous waste and:

"(a) As a result, recklessly causes substantial harm to human health or the environment; or

"(b) Knowingly disregards the law in committing the violation."

For purposes of ORS 468.926, a "person" includes "corporations." ORS 468.005(5).

the accumulated waste, which likely meant that it was storing more hazardous waste than permitted by law.[2] On April 5, 1995, in an effort to remedy the situation, two of defendant's employees poured the contents of 14 barrels of waste into a large pit on defendant's property. Shortly thereafter, several of defendant's employees on the property smelled a strong toxic odor. One employee grew concerned about the nature of the waste and reported the event to the City of Salem authorities. That report, in turn, prompted an investigation of defendant's property by the Marion County District Attorney's Office, the United States Environmental Protection Agency, and the Oregon Department of Environmental Quality. Soil surveys and samples taken from the empty barrels revealed that the waste dumped on defendant's property included substantial amounts of tolulene, ethylbenzene, and other hazardous substances. Additionally, many of the hazardous waste storage barrels on defendant's property were improperly labeled and dated.

Defendant was ultimately charged with two counts of unlawful disposal of hazardous waste in the first degree, ORS 468.926, two counts of unlawful water pollution in the first degree, ORS 468.946, and two counts of unlawful storage of hazardous waste in the first degree. ORS 468.926. As described below, defendant unsuccessfully moved to dismiss the indictment on the ground that the charges against it were brought in violation of ORS 468.961. Thereafter, following an eight-day trial, a jury convicted defendant of one count of unlawful storage of hazardous waste, finding that "on or between November 1, 1993 and April 5, 1995, [defendant] unlawfully and knowingly store[d] hazardous waste" and "act[ed] knowingly and in knowing disregard of the law when it committed this crime." Defendant appeals, assigning error to the trial court's denial of its motion to dismiss the indictment and motion for judgment of acquittal. We address each assignment of error in turn.

---

[2] According to the record, defendant was a "conditionally exempt generator" of hazardous waste during the Golden Gate Bridge project. ORS 465.003(2). As such, defendant could lawfully store hazardous waste for more than 180 days without a permit, but only so long as the amount of waste did not exceed a certain weight limit. *See* ORS 466.075(2).

Defendant's first assignment of error is based on ORS 468.961, which provides:

"(1) Except in exigent circumstances, no person shall be charged with a felony under ORS 468.922 to 468.956 without the personal approval of the district attorney of the county or the Attorney General of the State of Oregon.

"(2) In order to promote consistency in bringing criminal prosecutions under ORS 468.922 to 468.956, *the district attorney of each county shall adopt written guidelines for filing felony criminal charges under ORS 468.922 to 468.956.* The written guidelines, at a minimum, shall require the district attorney to consider and apply the following factors in determining whether to file criminal charges:[3]

"* * * * *

"(3) In order to promote consistency and uniformity in prosecutorial policies, *the Attorney General*, in consultation with the Oregon District Attorneys' Association, and *after appropriate opportunity for public comment, shall adopt model guidelines for prosecution of environmental crimes.* The Attorney General's model guidelines shall provide for consideration and application of the factors described in subsection (2) of this section. A district attorney may fulfill the district attorney's responsibility under subsection (2) of

---

[3] Subsection (2) of ORS 468.961 lists the following 10 factors:

"(a) The complexity and clarity of the statute or regulation violated;

"(b) The extent to which the person was or should have been aware of the requirement violated;

"(c) The existence and effectiveness of the person's program to promote compliance with environmental regulations;

"(d) The magnitude and probability of the actual or potential harm to humans or to the environment;

"(e) The need for public sanctions to protect human health and the environment or to deter others from committing similar violations;

"(f) The person's history of repeated violations of environmental laws after having been given notice of those violations;

"(g) The person's false statements, concealment of misconduct or tampering with monitoring or pollution control equipment;

"(h) The person's cooperation with regulatory authorities * * *;

"(i) The appropriate regulatory agency's current and past policy and practice regarding the enforcement of the applicable environmental law; and

"(j) The person's good faith effort to comply with the law to the extent practicable."

this section by adopting the Attorney General's model guidelines.

"(4)   Prior to or in conjunction with the filing of felony charges under ORS 468.922 to 468.956, the district attorney or the Attorney General shall file a certification with the court that the guidelines described in subsections (2) and (3) of this section have been applied and that, in the opinion of the district attorney or Attorney General, as the case may be, the criminal charges are being filed in accordance with the guidelines." ORS 468.961 (emphasis added).

Before addressing defendant's particular arguments regarding ORS 468.961, it is helpful to highlight two pertinent facts: (1) On September 14, 1994, the Marion County District Attorney adopted a set of guidelines for the prosecution of environmental crimes, as required by ORS 468.261(2).[4] (2) As contemplated by subsection (4) of the statute, the Marion County District Attorney certified, on the face of the indictment in this case, that "this indictment complies with the guidelines of the Marion County District Attorney's office adopted pursuant to ORS 468.961."

■      Before trial, defendant moved for an order dismissing the indictment on the ground that the charges against it were in violation of ORS 468.961 because the Marion County District Attorney adopted his written guidelines for prosecution of environmental crimes without an opportunity for public notice and comment. Specifically, defendant argued that, (1) ORS 468.961 itself required the district attorney to allow an opportunity for notice and comment before adopting the guidelines; and (2) alternatively, under the Oregon Administrative Procedures Act (APA), the district attorney was required to comply with the APA's notice and comment rulemaking requirements in adopting the guidelines. ORS 183.335. The state responded that defendant's motion to dismiss should be denied because neither ORS 468.961 nor the APA required the district attorney to afford public notice and

---

[1] In addition to the 10 factors listed in ORS 468.961(2), the Marion County District Attorney's guidelines for the prosecution of environmental crimes include three other factors to be weighed by the prosecutor in each case: (1) the actions and the mental state of the actor; (2) the likelihood of a successful affirmative defense; and (3) whether the person's underlying conduct that lead to the violation is inherently criminal in nature.

comment before adopting the guidelines. The state also argued that, in all events, dismissal of the indictment was not a remedy available to defendant for an alleged APA violation. The trial court denied defendant's motion for dismissal of the indictment.[5]

■ On appeal, defendant reiterates the arguments it made below. First, defendant argues that the language of ORS 468.961 itself requires district attorneys to allow an opportunity for public comment before adopting the prosecutorial guidelines required by that statute. The state responds that ORS 468.961 contains no such requirement, and we agree.

■ Defendant correctly points out that subsection (3) of ORS 468.961 provides that "the Attorney General, * * * *after appropriate opportunity for public comment,* shall adopt model guidelines for prosecution of environmental crimes." ORS 468.961(3) (emphasis added). However, subsection (2), the subsection pertaining to adoption of guidelines by district attorneys, does *not* include any "appropriate opportunity for public comment" language. Rather, that subsection simply provides that "the district attorney of each county shall adopt written guidelines for filing felony criminal charges under ORS 468.922 to 468.956." ORS 468.961(2). Thus, under the well-established principle of statutory construction that the legislature's "use of a term in one section and not in another section of the same statute indicates a purposeful omission," *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993), ORS 468.961(2) does not require district attorneys to allow for public comment in adopting guidelines pertaining to the filing of felony charges for environmental crimes.

Defendant's second argument, which is based on the APA, is more complex. Under the APA, agencies are required

---

[5] The state argues that we cannot consider defendant's first assignment of error because the record does not contain a written order denying defendant's motion and the hearing held on defendant's motion to dismiss is not included in the transcript on appeal. The state is incorrect. The fact that the case proceeded to trial makes it clear that defendant's motion was denied. Moreover, notwithstanding the noted deficiencies, the record is adequate for our review. *Cf. Grant County v. Arcanum Institute, Inc.,* 142 Or App 479, 483, 921 P2d 414 (1996) (record lacking transcript of court's initial ruling was inadequate for appellate review).

to comply with detailed notice and comment requirements "[p]rior to the adoption, amendment or repeal of any rule." ORS 183.335. The APA defines a "rule" as

"any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include:

"(a) Unless a hearing is required by statute, internal management directives, regulations or statements which do not substantially affect the interests of the public:

"(A) Between agencies, or their officers or their employees; or

"(B) Within an agency, between its officers or between employees." ORS 183.310(8).

For purposes of the APA definition of a "rule," an "agency" is "any state board, commission, department, or division thereof, or officer authorized by law to make rules or to issue orders, except those in the legislative and judicial branches." ORS 183.310(1).

Reduced to its essentials, defendant's APA-based argument is that, (1) a district attorney is a state official who falls within the APA definition of "agency"; (2) the guidelines adopted by district attorneys under ORS 468.961(2) are "rules" as defined in ORS 183.310(8); and (3) consequently, in order to validly adopt the guidelines required by ORS 468.961(2), district attorneys must comply with APA notice and comment rulemaking requirements.

The state responds that defendant's argument fails for any of three alternative reasons. First, the guidelines are "internal management directives" and, as such, are specifically excepted from the APA definition of "rules." ORS 183.310(8)(a). Second, a district attorney is not a state "agency" under the APA, and, thus, guidelines adopted by district attorneys are not "rules" subject to APA notice and comment requirements. Third, even assuming that the district attorney was required to comply with APA rulemaking

procedures in adopting the guidelines, dismissal of the indictment is not a remedy available to a defendant in an environmental criminal prosecution. With respect to this third argument, the state asserts, particularly, that the district attorney's adoption of the guidelines without notice and comment proceedings (again, assuming they were required) would affect only the validity of the "rules," not the efficacy of the otherwise lawful criminal indictment.

As explained below, we conclude that, even assuming that the district attorney was required to comply with APA rulemaking procedures in adopting the guidelines, dismissal of the criminal indictment is not a remedy available to defendant. Consequently, we need not, and do not, address the state's alternative arguments.

Defendant's argument—that the district attorney's failure to follow APA notice and comment procedure in adopting the guidelines entitles him to dismissal of his indictment—is premised on the notion that either ORS 468.961 or the APA authorizes dismissal under such circumstances. We disagree. Neither ORS 468.961 nor the APA compels dismissal.

ORS 468.961 embodies three essential requirements: (1) The decision to prosecute an environmental crime must be made personally by either a district attorney or the Attorney General. ORS 468.961(1). (2) District attorneys and the Attorney General must adopt guidelines consisting of at least 10 specified factors. ORS 468.961(2), (3). (3) The decision to prosecute an environmental crime must be made only after consideration and application of the appropriate guideline factors. *Id.* To ensure that individual prosecutions comport with these requirements, ORS 468.961 also contains a procedural requirement: the district attorney or the Attorney General must "file a certification with the court that [guidelines] have been applied and that, in the opinion of the district attorney or Attorney General, as the case may be, the criminal charges are being filed in accordance with the guidelines." ORS 468.961(4). Although ORS 468.961 does not provide any explicit remedy for noncompliance with the certification requirement, the structure of the statute suggests that

such an omission would properly be the subject of a pretrial motion challenging the indictment.[6]

Here, the Marion County District Attorney did, in fact, adopt guidelines requiring the district attorney to consider and apply the 10 factors listed in subsection (2) of ORS 468.961. *See* 165 Or App at 677 n 3. Further, in initiating this prosecution, the district attorney did, in fact, file the requisite certification that he had complied with those guidelines in deciding to bring charges against defendant. Thus, the essential requirements of ORS 468.961 have been satisfied. Nothing in ORS 468.961 suggests that the district attorney's failure to allow notice and comment on the underlying guidelines should warrant the drastic remedy of dismissal of a criminal indictment.

Nor does the APA compel dismissal in these circumstances. We emphasize that this is not a case in which defendant is being prosecuted for violation of the "rule," *i.e., the guidelines*. That is, defendant's criminal liability arises from substantive environmental statutes and regulations, and the guidelines merely bear on the decision as to whether or when to prosecute. Bluntly: defendant's motion to dismiss assumes that, regardless of whether defendant committed environmental felonies, the indictment must be dismissed notwithstanding the district attorney's adoption of guidelines incorporating the 10 mandatory factors prescribed in ORS 468.961(2), and notwithstanding the district attorney's certification, because there was no public notice and comment on those guidelines.

Defendant cites no authority supporting dismissal of the criminal charges in this circumstance, and we are aware

---

[6] The legislative history of ORS 468.961 confirms that understanding. At a hearing before the Senate Judiciary Committee, Multnomah County Assistant District Attorney John Bradley, who was instrumental in drafting the statute, stated that ORS 468.961 required adoption of written guidelines including various factors and further required that the district attorney consider and weigh those factors and certify that he or she has done so. In response to a question from Bill Taylor, Counsel for the Senate Judiciary Committee, Mr. Bradley stated that, if the district attorney failed to certify that he or she had complied with the appropriate guidelines, the indictment would be subject to a motion to set aside. Tape Recording, Senate Judiciary Committee, SB 912, May 18, 1993, Tape 164, Side II (statement of John Bradley).

of none. As noted, this case is not a case in which the gravamen of the criminal charge is "enforcement of [a] rule." ORS 183.400(2). *See, e.g., Alto v. State Fire Marshal*, 319 Or 382, 392-93, 876 P2d 774 (1994) (explaining nature of a rule challenge under the "'enforcement' provision of ORS 183.400(2)"). Consequently, even assuming that the guidelines are subject to the APA, any deficiency in notice and comment does not compel dismissal of the indictment.

■ Defendant finally, and in a conclusory manner, asserts that, because the decision to prosecute this case was based on guidelines adopted without public notice and comment, the prosecution violated the equal privileges and immunities provision of Article I, section 20, of the Oregon Constitution.[7] As we understand it, defendant is raising a sort of "selective" or "discriminatory" prosecution argument.

Defendant's argument misses the mark. Under the Oregon Constitution,

> "the mere presence of discretion does not necessarily present any inherent section 20 problems, so long as the exercise of discretion 'adheres to sufficiently consistent standards to represent a coherent, systematic policy.' Stated differently, the exercise of discretion meets the constitutional standard if 'made by permissible criteria and consistently applied.'" *State v. Buchholz*, 309 Or 442, 446-47, 788 P2d 998 (1990) (quoting *State v. Freeland*, 295 Or 367, 377, 667 P2d 509 (1983)) (citations omitted).

Here, there is no indication in the record that the prosecutor's exercise of his discretion was *ad hoc* or otherwise egregious. In fact, the district attorney certified that he applied the Marion County guidelines, which, as noted, include the 10 factors required by ORS 468.961 and several other criteria. Defendant has not demonstrated that the criteria in the Marion County guidelines are not "sufficiently consistent standards to represent a coherent, systematic policy." *Freeland*, 295 Or at 375.

---

[7] Defendant also cites the Fourteenth Amendment to the United States Constitution but does not provide any separate argument or analysis under that provision.

■■ We turn to defendant's second assignment of error. Defendant argues that the trial court erred in denying its motion for a judgment of acquittal because the state failed to prove that defendant had violated both statutes *and* "rules, standards, licenses, permits and orders," as alleged in the indictment.[8] Relying exclusively on a footnote in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), defendant argues that the state must prove in the conjunctive when it pleads in the conjunctive. In response, the state asserts that, notwithstanding the footnote in *Boots*, "the practice of pleading in the conjunctive and proving in the disjunctive is solidly entrenched in Oregon law," and the trial court was correct in so concluding. For the reasons that follow, we agree with the state.

In *State of Oregon v. Carr*, 6 Or 133 (1876), the Supreme Court addressed the question of whether the state must prove in the conjunctive when it pleads in the conjunctive. There, the indictment stated that the defendant "did willfully and unlawfully deal, play *and* carry on * * * a game of faro." 6 Or at 134. The trial court granted the defendant's demurrer on the ground that the indictment violated the requirement that an indictment "must charge but one crime, and in one form only, except that when the crime may be committed by the use of different means, the indictment may allege the means in the alternative." *Id*. The Supreme Court reversed, stating:

> "When the statute makes it a crime to do this or that, mentioning several things disjunctively, the indictment may, as a general rule, embrace the whole in a single count, but it must use the conjunctive 'and' where 'or' occurs in the statute, else it will be defective for uncertainty. * * * We think, therefore, that the indictment is not defective in this respect." *Id*.

The Supreme Court has reiterated its holding in *Carr* on several subsequent occasions. *See, e.g., State v. White*, 48 Or 416,

---

[8] The exact language of count 6 of the indictment charged that

"on or between 11/01/93 and 04/05/95 in Marion County, Oregon, in violation of ORS 466.095, ORS 466.100, and the rules, standards, licenses, permits and orders adopted and issued under ORS 466.020, 466.095 and 466.100 [defendant] did unlawfully and knowingly and in knowing disregard of the law, store hazardous waste."

421, 87 P 137 (1906) ("This court has repeatedly held that where a statute makes it a crime to do either of several acts stated disjunctively therein, all of such acts may be embraced in one count, using the conjunction 'and' where 'or' occurs in the statute."); *State v. Soasey*, 237 Or 167, 171, 390 P2d 190 (1964) (holding that where "[t]he statute is in the disjunctive" and the "indictment is in the conjunctive * * *, [p]roof of any one of the acts charged was sufficient to make out the offense").

Defendant argues that, in *Boots*, the Supreme Court reversed that line of cases with the following language:

> "The indictment charged that defendant both killed the victim in the course of the robbery *and* did so in order to conceal the perpetrator's identity. The governing statute prescribes that when a crime may be committed by the use of different means, the indictment may charge the means in the alternative. ORS 132.560. In view of the statute, a reader reasonably may infer that when an indictment uses 'and' instead of 'or,' it charges that both means were used and that both need to be proved. The continued use of 'and' where 'or' is called for testifies to the power of habit, custom, and faith in existing forms over the force of mere statutes. *See State v. White*, 48 Or 416, 87 P 137 (1906); *State v. Carr*, 6 Or 133 (1876)." 308 Or at 374 n 3.

Taken out of context, the *Boots* footnote might be read to stand for the proposition asserted by defendant. However, when the footnote is read in the context of the case, it is clear that it was a mere observation about linguistic confusion potentially caused by the practice of pleading in the conjunctive and proving in the disjunctive.

In *Boots*, the defendant was charged with aggravated murder based on either of two aggravating factors, which the indictment pled in the conjunctive. The jury was given instructions that "any combination of twelve jurors agreeing that one or the other or both of the [aggravating factors] occurred is sufficient to establish this offense." *Id*. at 375. The Supreme Court reversed and remanded, holding that "the jury must unanimously agree on the facts required by either [aggravating factor]." *Id*. at 377. The court did *not* hold that the state was required to prove that the defendant had committed *both* of the aggravating factors alleged in the

indictment. While the court's footnote reflects a certain skepticism of the wisdom of the "plead in the conjunctive and prove in the disjunctive" practice, the court's holding implicitly recognized that proof of either one of the two conjunctively plead aggravating factors would support an aggravated murder conviction.

We are thus persuaded that the footnote observation in *Boots* did not repudiate the validity of the line of cases endorsing the "plead in the conjunctive and prove in the disjunctive" practice. We note, moreover, that in a recent post-*Boots* opinion, the Supreme Court implicitly held that where an indictment for aggravated felony murder charged the defendant with both committing *and* attempting to commit robbery, it was sufficient for the state to prove one or the other. *State v. Thompson*, 328 Or 248, 267-68, 971 P2d 879 (1999).

Given our conclusion that the "plead in the conjunctive and prove in the disjunctive" principle remains valid under Oregon law, we conclude that the state's use of the conjunctive in its indictment of defendant did not mean that it was required to prove in the conjunctive. Defendant has not demonstrated that the conjunctive language used in his indictment is in any way meaningfully distinguishable from the other contexts in which the state may plead in the conjunctive and prove in the disjunctive. Accordingly, the trial court correctly denied defendant's motion for a judgment of acquittal.

Affirmed.